■ In the Matter of BERTRAND BELANGER, Petitioner, v NEW YORK STATE RACING AND WAGERING BOARD, Respondent.

—Yesawich, Jr., J. Proceeding pursuant to CPLR article 78 (transferred to this court by order of the Supreme Court at Special Term, entered in Essex County) to review respondent's determination which suspended petitioner's license to participate in pari-mutuel racing for a period of 60 days.

In a harness race held August 20, 1982 at Saratoga Raceway, petitioner rode Sailor George to a second-place finish. Subsequent laboratory tests of the urine sample taken from the horse after the race showed that it raced with the drug phenylpropanolamine (PPA) in its system *(see,* 9 NYCRR 4120.2). Based on the urinalysis, the presiding judge at the raceway suspended petitioner's racing license for 60 days. Petitioner appealed to respondent. At the hearing on that appeal, petitioner and the two chemists who performed the testing were the key witnesses. The hearing officer sustained the charge and penalty imposed, and respondent confirmed that action.

In this proceeding, petitioner contends that respondent's determination is unsupported by substantial evidence and that its policy of reducing the size of the penalty in those instances where no appeal is taken violates his constitutional right to due process of law. The latter contention has heretofore been considered and rejected by this court *(Matter of Crawford v New York State Racing & Wagering Bd.,* 100 AD2d 653, 653-654); we adhere to that decision.

With respect to the sufficiency of the proof, it is not seriously disputed that Sailor George ran with PPA in its system. The professionals charged with collecting and analyzing the horse's urine testified persuasively to that end. However, it was never established how the PPA, which was in an amount consistent with a clinical dosage of the drug, entered the horse. This evidence, coupled with 9 NYCRR 4120.4, which is the trainer's responsibility regulation, created a rebuttable presumption that petitioner was answerable for the horse's tainted condition. That regulation, the validity of which is undisputed *(see, Barchi v Sarafan,* 436 F Supp 775, 783-784, *mod sub nom. Barry v Barchi,* 443 US 55), provides in pertinent part: "The trainer shall be held responsible for any positive tests unless he can show by substantial evidence that neither he nor any employee nor agent was responsible for the administration of the drug or other restricted substance" (9 NYCRR 4120.4). At the hearing, petitioner failed to carry this burden.

The only exculpatory evidence produced by petitioner con-

sisted of his disavowal of knowledge of how the horse received the PPA, his hypothesis that the urine sample was contaminated, a hypothesis not borne out by the record, and the parties' stipulation that petitioner's five grooms would also deny knowledge of who administered the drug. Inasmuch as lack of knowledge on the part of petitioner and his employees is insufficient to overcome the higher standard of liability than that of merely personal knowledge, which the trainer's responsibility regulation imposed on petitioner *(see, Cooney v American Horse Shows Assn.,* 495 F Supp 424, 431-432), there is ample evidence to support respondent's conclusion.

Determination confirmed, and petition dismissed, without costs. Main, J. P., Weiss, Yesawich, Jr., Levine and Harvey, JJ., concur.